953 So.2d 266 (2007)
Charles CALDWELL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CP-00040-COA.
Court of Appeals of Mississippi.
February 6, 2007.
*267 Charles Caldwell, appellant, pro se.
Office of the Attorney General by Deshun Terrell Martin, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
IRVING, J., for the Court.
¶ 1. Charles Caldwell appeals the judgment of the Monroe County Circuit Court dismissing his motion for post-conviction relief (PCR). He asserts (1) that his guilty plea was involuntarily made, (2) that he was denied due process of law, (3) that he was denied effective assistance of counsel, and (4) that the trial court erred in refusing to grant his motion for an evidentiary hearing.
¶ 2. We find no merit to the allegations of error; therefore, we affirm the trial court.

FACTS
¶ 3. Caldwell was indicted by a Monroe County grand jury for fondling and three counts of sexual battery of a five-year-old female. On November 12, 2003, Caldwell pleaded guilty to one count of sexual battery. He was sentenced to thirty-five years in the custody of the Mississippi Department of Corrections, with eighteen years suspended and five years of post-release supervision. The charge of fondling and two counts of sexual battery were passed to the files.
¶ 4. On February 23, 2005, Caldwell filed a PCR motion. Affidavits from his mother, father, an aunt, and brothers were attached to the motion.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Involuntary Guilty Plea
¶ 5. A criminal defendant's guilty plea is binding only when it is entered voluntarily and intelligently. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992).
"It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it involves him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty."
*268 Reeder v. State, 783 So.2d 711, 717(¶ 20) (Miss.2001) (quoting Smith v. State, 636 So.2d 1220, 1225 (Miss.1994)).
¶ 6. Caldwell contends that his guilty plea was involuntarily made because (1) he pleaded guilty after being persuaded by his attorney, (2) his attorney failed to properly investigate the facts surrounding the charges, and (3) his attorney assured him that he would get out of prison within three to four years. As shown by the following exchange, the record clearly belies allegations one and three:
[BY THE COURT]:
Q. Do you understand that by these questions the Court is attempting to determine if the pleas of guilty which you have offered to make will be made by you knowingly, freely, understandingly, and voluntarily?[1]
A. Yes, sir.
Q. Are these pleas of guilty free and voluntary on your part?
A. Yes, sir.
Q. Has anyone threatened you in any way or promised you anything in order to get you to plead guilty to these charges?
A. No, sir.
Q. Do you understand that by pleading guilty to these charges you are giving up or waiving a great number of legal rights that you have as a defendant in a criminal proceeding?
A. Yes, sir.
Q. Do you understand the meaning of the word waive, W-A-I-V-E?
A. Yes, sir.
Q. Do you understand that by pleading guilty to these charges you are waiving your right to be tried before a jury on these charges, to participate in the selection of a jury for the trial of each of the cases? As it turns out, two trials would be required because there are two court files and each of them contain different allegations, different charges. So it would require two juries and two separate trials, and you're entitled to that. You understand that?
A. Yes, sir.
Q. Do you understand that by pleading guilty to these charges you are waiving the requirement that the State of Mississippi prove each of these charges and each and every element of the crimes charged beyond a reasonable doubt?
A. Yes, sir.
Q. Do you understand that by pleading guilty to these charges you are waiving your right to remain silent?
A. Yes, sir.
Q. Do you understand that if you did go to trial before a jury on either or both of these cases and you exercised your right to remain silent, that is, you did not testify during the trial or trials, no inference or suggestion of your guilt could be drawn from the fact that you did not testify and that I would instruct the jury to that effect if you asked me to do so?
A. Yes, sir.
¶ 7. We also point out the following exchange made during the plea proceedings:
Q. Mr. Caldwell, do you understand the recommendation made by the State?
A. Yes, sir.
Q. Is that the recommendation that you understood the State would make?

*269 A. Yes, sir.
Q. Do you understand that the recommendation is not binding on me, that I could impose the maximum penalty in each of these cases or slightly less than three life imprisonment sentences? Do you understand that?
A. Yes, sir.
Q. Has anyone put any pressure on you, forced you in any way, or told you that you had to plead guilty to these charges?
A. No, sir.
* * * *
Q. Mr. Caldwell, are you satisfied with the legal services and the advice given you by your attorney?
A. Yes, sir.
Q. Do you think that he has properly advised you before pleading guilty to these charges and represented your best interest in handling these cases?
A. Yes, sir.
Q. Do you have any questions about what is taking place here?
A. No, sir.
Q. Is there anything about these proceedings that you do not understand?
A. No, sir.
* * * *
BY THE COURT: The Court finds this defendant has knowingly, understandingly, freely, and voluntarily entered each of these pleas of guilty, that there is factual basis for those pleas. The pleas are accepted. The defendant is adjudged guilty on his pleas of guilty.
Before I impose sentence, Mr. Caldwell, do you have anything you would like to say?
CALDWELL: No, sir.
¶ 8. The plea transcript does not indicate that Caldwell was informed prior to his plea that he would have to serve his sentence day for day. However, during his sentencing hearing,[2] the following colloquy transpired:
BY THE COURT: Mr. Caldwell, in the case of 02-258, Monroe County Circuit Court in count II of that cause, the Court is going to sentence you to a term of thirty-five years in the custody of the Mississippi Department of Corrections. Based upon the State's recommendation, I am going to suspend eighteen of those years provided that you do not violate any laws of this state or [of] any other state or of the federal government and specifically conditioned upon you complying with all the terms and conditions of your post-release supervision. That's going to give you seventeen years to serve. Because our statutes are written the way that they are, it ensures that you're going to serve that period of time day for day. Mr. Williams, was that explained to him in the plea proceedings?
[ATTORNEY FOR THE DEFENDANT]: Yes, ma'am.
Had counsel's representation to the court been inaccurate, it is inconceivable to us that Caldwell would not have corrected him. Therefore, we find that Caldwell was fully informed prior to entering his guilty plea that he would have to serve his sentence day for day, notwithstanding his belated allegation that his attorney informed him that he would get out of prison within three to four years. In addition, there is nothing in the record, except Caldwell's *270 allegations in his PCR motion and the statements of the family-member affiants in their affidavits, that supports Caldwell's argument that his attorney told him that Caldwell would only serve three to four years.
¶ 9. Based on our review of the transcripts of the plea and sentencing hearings, we find that the trial judge thoroughly examined Caldwell and determined that Caldwell understood the consequences of his guilty plea and that he entered his plea knowingly, voluntarily, and intelligently.
¶ 10. As to Caldwell's claim that he was pressured into pleading guilty because his attorney failed to investigate the facts surrounding the charges against him or accept the services of a private investigator, we are unable to discern any merit in this allegation. There is no dispute that Caldwell is the person who committed sexual battery upon the minor female, as evidenced by his guilty plea. Further, and most importantly, Caldwell does not inform us of the exculpatory evidence that a private investigator would have been able to uncover. Therefore, there is no merit to Caldwell's assertion that his counsel's failure to accept the services of a private investigator, assuming same was offered, somehow forced Caldwell to plead guilty.
2. Ineffective Assistance of Counsel
¶ 11. In order to be successful on an ineffective assistance of counsel claim, Caldwell is required to show not only that his attorney was deficient, but also that he was prejudiced by this deficiency. Strickland v. Washington, 466 U.S. 668, 691-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden is upon Caldwell to show that his attorney's errors were so serious that he was denied "`counsel' guaranteed [to him] by the Sixth Amendment." Id. at 687, 104 S.Ct. 2052. The Mississippi Supreme Court has stated that "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." Powers v. State, 883 So.2d 20, 32(¶ 43) (Miss.2003) (citing Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999)).
¶ 12. We have already discussed in the preceding issue Caldwell's assertion that certain derelictions on the part of his trial counsel forced him to plead guilty involuntarily. We will not repeat that discussion here. We address only the additional allegation that counsel was ineffective for failing to present witnesses at Caldwell's sentencing hearing.[3]
¶ 13. Several of Caldwell's family members presented affidavits in which they claimed that had they been allowed to testify, they would have expressed to the judge, among other things, some of Caldwell's good character traits. In Wiggins v. Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the United States Supreme Court stated:
[i]n finding that [Wiggins' counsels'] investigation did not meet Strickland's performance standards, we emphasize that Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case. Both conclusions would interfere with the "constitutionally protected independence of counsel" at the heart Strickland.

*271 ¶ 14. We note at the outset that Caldwell had the opportunity on two separate occasions during the sentencing hearing to bring to the court's attention that witnesses were present to testify on his behalf. The court inquired of Caldwell's attorney if he or Caldwell desired to make a statement. The attorney and Caldwell each responded that he did not. The court also asked Caldwell if he had any questions that he wanted to ask and informed Caldwell that "now is the time to ask any questions that you might have." Caldwell answered "no." As indicated, the court clearly afforded Caldwell an opportunity to raise any questions or concerns that he may have had. It defies reason that Caldwell would decline to tell the court that his lawyer had refused to allow him to present witnesses to speak on his behalf in mitigation of his sentence. However, we also note that based on the submitted affidavits, even if the witnesses had been called to testify, they would not have offered any useful mitigating testimony.
¶ 15. As noted by the trial judge during the plea qualification hearing, Caldwell could have been sentenced to as much as "slightly less than three life sentences." Caldwell's sentence of thirty-five years with eighteen years to serve and five years of post-release supervision is considerably less than the maximum sentence that Caldwell could have received. Therefore, it is difficult for this Court to see how Caldwell can argue that he was denied effective assistance of counsel. We find no merit to this issue.
3. Evidentiary Hearing
¶ 16. "The trial court is simply not required to grant an evidentiary hearing on every petition it entertains." Rowland v. Britt, 867 So.2d 260, 262(¶ 8) (Miss.Ct. App.2003). "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified." Miss.Code Ann. § 99-39-11(2) (Rev.2000). There is nothing in Caldwell's motion which requires an evidentiary hearing. Therefore, the trial judge did not err in summarily denying Caldwell's PCR motion.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Circuit Judge Thomas J. Gardner III took Caldwell's guilty plea.
[2] The sentencing hearing was before Circuit Judge Sharion R. Aycock.
[3] Caldwell also asserts that counsel's failure in this regard denied him due process of law. Since we address the witness issue during our discussion of the ineffective assistance of counsel claim, we decline to address it as a separate issue.